PRATHER, Justice,
for the Court:
This case involves an election contest from Harrison County in which there are two questions for resolution.
(1) Was the electronic voting machine system used in Harrison County, Mississippi, in the August 2, 1983 Democratic Pri *554 mary valid under section 42 U.S.C. 1973 et seq. of the Voting Rights Act of 1965; and
(2) Does the Electronic Voting Systems Act, section 23-7-301 et seq., Mississippi Code Annotated supersede and/or satisfy the requirements of the Corrupt Practices Act with respect to (A) initialing of ballots and (B) the contents, custody, returning and sealing of the boxes?
Both of these questions were resolved by the specially appointed tribunal, Chancellor Edward J. Prisock, in favor of the appellee, Hue B. Snowden and against the contestant, Philip 0. Allen. We affirm.
I.
On August 2, 1983, Snowden and Allen were candidates in the Democratic Primary for the office of Supervisor, Fourth District of Harrison County. Allen lost the race by 62 votes.
The voting system used in Harrison County is known as a “punch card” system, and is technically known as a votamatic vote recorder. Under this system, the paper ballot is replaced by a card which is voted by punching a hole into the designated space by the candidate’s name. Attached to the card is a stub which is numbered in sequence with all other ballot cards.
The voter receives the card from the poll manager with the stub attached, and punches his vote into the card. The ballot or punch card is then returned to the election officer. The voter detaches the numbered stub from the ballot card in the presence of the election officer and places the ballot card in the ballot box. The election officer then places the numbered stub on a string with all other numbered stubs. After the polls close, the ballot cards are electronically tabulated.
This voting system has been in use in Harrison County since 1967. However, it was not submitted for approval by the U.S. Attorney General in compliance with the Voting Rights Act of 1965 until September 30, 1983. The U.S. Attorney General opinion interposing no objections to its use was not issued until October 4, 1983.
After the District Four Supervisor’s race was completed, it was discovered that in one of the precincts within District Four of Harrison County, none of the ballots were initialed by the initialing manager as required by Corrupt Practices Act, section 23-3-13. Also, ballots in three other precincts were initialed, but not by an initialing manager other than the receiving manager as provided for in the same section, 23-3-13 of the Mississippi Code.
A petition by Allen contesting the election was filed with the Harrison County Democratic Committee on these grounds of initialing technicalities and noncompliance with Voting Rights Act of 1965. No fraud was charged. The petition was denied and Allen filed his petition for judicial review of the election contest with the Harrison County Circuit Court. A special tribunal was called and the two issues mentioned were submitted for “determination of law prior to trial on the merits.” Those two questions were answered in favor of Snow-den and an interlocutory appeal permitted.
II.
The first question is whether the Electronic Voting Systems Act for use in Harrison County had been approved pursuant to the Voting Rights Act of 1965, section 42 U.S.C.A. 1973 et seq.
This Court’s holding in Ladner v. Fisher, 269 So.2d 633 (Miss.1972) is disposi-tive of this issue. In that case we held that a voting statute is, upon approval of the U.S. Attorney General, effective from the date of passage of the Act by the Legislature. Id. at 634-635. This state’s Legislature adopted the Electronic Voting Systems Act in 1966. It has been used in Harrison County since 1967. The approval by the U.S. Attorney General of this Act on October 4, 1983 relates back to the date of passage by the Legislature. We find no merit in this argument.
*555 III.
The next question is whether the provisions of the Electronic Voting Systems Act satisfy or supersede the Corrupt Practices Act with respect to initialing the ballots and the contents, returning, sealing, and custody of ballot boxes.
When this question was presented to the special tribunal on its merit, there was no proof offered as to the contents, returning, sealing, and custody of ballot boxes. We, therefore, consider only the question of whether serially numbered ballots used under the Electronic Voting Systems Act supersedes the requirement that ballots be initialed as provided for in the Corrupt Practices Act. We hold that the serially numbered ballots do not have to be initialed. We base this conclusion on an analysis of the Corrupt Practices Act, section 23-3-1 et seq. (1972), and the Electronic Voting System Act, section 23-7-301 et seq. (1972).
Under the Corrupt Practices Act, Mississippi Code Annotated section 23-3-13 (1972) provides inter alia, that:
Upon the opening of the polls, and not before, the managers of the election shall designate one of their number, other than the manager theretofore designated to receive the blank ballots, who shall thereupon be known as the initialing manager. When any person entitled to vote shall appear to vote, he shall first sign his name in a receipt book or booklet provided for that purpose and to be used at that election only and said receipt book or booklet shall be used in lieu of the list of voters who have voted formerly made by the managers or clerks; whereupon and not before, the initialing manager shall indorse his initials on the back of an official blank ballot, prepared in accordance with law, and at such place on the back of the ballot that the initials may be seen after the ballot has been marked and folded, and when so indorsed he shall deliver it to the voter, which ballot the voter shall mark in the manner provided by law, which when done the voter shall deliver the same to the initialing manager in the presence of the others, and the manager shall see that the ballot so delivered bears on the back thereof the genuine initials of the initialing manager, and if so, but not otherwise, the ballot shall be put into the ballot box; and when so done one of the managers or a duly appointed clerk shall make the proper entry on the poll book.
The requirement that “paper ballots” be initialed by someone other than the receiving manager was to prevent the fraudulent conduct commonly known as the “tasmani-an dodge” whereby a blank ballot was passed to a dishonest politician who pre-marked it and paid a corrupt voter to take it to the poll to vote. The corrupt voter received his ballot, but put the premarked ballot in the ballot box. He then took the blank ballot he received at the poll to the dishonest politician who again premarked it and paid the second corrupt voter to vote the ballot. This process continued throughout election day.
This practice was eliminated by requiring the initialing manager to initial the ballot before it was given to the voter. A checking system was created by requiring that the initialing manager be someone other than the receiving manager, the manager receiving the blank ballots from the distributor.
In 1966 the Mississippi Legislature passed the Electronic Voting System Act to permit use of voting machines or electronic tabulators within counties or cities that desired to do so. Section 23-7-301 et seq. (1972).
The Electronic Voting Systems Act at Mississippi Code Annotated section 23-7-311 (1972) says that, “If ballot cards are used, each card shall have a serially numbered stub which shall be removed in the presence of an election officer by the voter before being deposited in the ballot box.”
Under section 23-7-317, as amended, the procedure provided that “If ballot cards are used, the voter, after he has marked his ballot card, shall remove the stub in the presence of the election officer, and deposit the ballot card inside the ballot box.” Fur *556 ther, a “ballot card” is defined as “a tabulating card on which votes may be recorded by means of punching or marking.” Mississippi Code Annotated section 23-7-301 (1972).
No portion of the Electronic Voting Systems Act requires that ballots be initialed. The only initialing requirement is that which is provided for under section 23-3-13 of Corrupt Practices Act supra, in a primary election.[1]
Additionally, section 23-7-303, Mississippi Code Annotated (1972) provides that:
[T]he provisions of this Article [Electronic Voting System Act] shall be controlling with respect to election where an electronic voting system is used, and shall be liberally construed so as to carry out the purpose of this Article. The provisions of the election law relating to the conduct of elections with paper ballots, insofar as they are applicable and not inconsistent with the efficient conduct of elections with electronic voting systems, shall apply. (Emphasis added).
With the advent of electronic tabulating machines, came the requirement that “ballot cards” have attached thereto sequentially numbered stubs. These numbered stubs are designed to prevent the same fraudulent activity that the initialing process was designed to prevent. The election manager issues a numbered “ballot card” to the voter after the voter has signed the poll registry and receipt book. The voter either marks, or as in this case, punches the “ballot card.” After voting the “card” in the tabulating machine, the ballot is returned to the election manager, who in the presence of the voter detaches the numbered stub from the ballot. The “ballot card” is not placed in the ballot box until the stub is detached. The stub after being detached is placed on a spindle or string as in this case and is kept with all other stubs.
Under these circumstances, if a dishonest politician fraudulently obtained a numbered ballot at the beginning of the election day, when his first corrupt voter would enter the poll, he would receive a “ballot card” with a higher number than the one given to him by the politician. If he voted the politician’s ballot, it would be out of sequence with the ballots being voted by legitimate voters at that time. The election officer would be able to see that the ballot being returned would be substantially out of sequence; therefore, the fraudulent scheme would not work.
IV.
The Corrupt Practices Act and the Electronic Voting Systems Act must be construed together. The Electronic Voting Systems Act does not supersede the Corrupt Practices Act, but merely provides a method for a newer and more efficient way of tabulating votes. However, for the initialing procedures of the Corrupt Practices Act to apply to “ballot cards” used pursuant to the Electronics Voting Systems Act, the initialing process must be both “applicable and not inconsistent with the efficient conduct of elections with electronic voting systems.” Mississippi Code Annotated section 23-7-303 (1972). We hold that the initialing process is inapplicable in primary elections where sequentially numbered ballot cards are used since the numbers serve the same purpose served by the initials.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and ROBERTSON, JJ., concur.

. Initialing of ballots under section 23-3-13 only applies to primary elections. Initialing is not required in a general or special election. See Hubbard v. McKey, 193 So.2d 129 (Miss.1966).