501 So.2d 1124 (1987)
James E. MARTIN
v.
STATE of Mississippi.
No. 56145.
Supreme Court of Mississippi.
January 28, 1987.
*1125 Jim Waide, Jacqueline C. Estes, Estes & Waide, Tupelo, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
DAN M. LEE, Justice, for the Court:
James E. Martin was indicted, on September 13, 1983, for the crime of having "wilfully, unlawfully and feloniously manufacture[d] and distill[ed] a quantity of wine, an intoxicating liquor, which if drunk to excess, will produce intoxication, for the purpose of selling the same." He was tried in the Circuit Court of Itawamba County, and found guilty. The trial court, on July 20, 1984, sentenced him to three years' imprisonment, with the three years suspended, and put him on unsupervised probation. Martin was also ordered to pay a fine of $750.00 and the costs of court. He appeals, assigning the following as error:

I.
The indictment charged no offense and the proof showed none.

II.
Martin's conviction was prohibited by the "Void for Vagueness" doctrine of United States Constitution Amendment Fourteen.
Finding that Martin's contentions have merit, we reverse his conviction and sentence.
The facts of this case are largely undisputed. Martin and his mother had started a vineyard about three or four years before his arrest, on his mother's land. As they were both disabled, they looked upon the venture as something to fill their time, with the possibility of someday going into the business of selling wine. The muscadine vineyard was no secret: Martin got technical advice from Mississippi State University horticulturists and enologists, and legal advice from local attorneys and government officials. All of the people who gave Martin legal advice told him that it was within the law to manufacture muscadine wine in Itawamba County, even though the county is dry, apparently being convinced that the Native Wine Act superseded any law on prohibition.
Sheriff Willis Leland Taylor knew for about three years that Martin was making wine. On July 29, 1983, he sent his stepson and Special Deputy, Ben Summerford, out to Martin's place to purchase some of it. Summerford purchased a gallon of wine from Martin for $10.00. On August 18, Summerford returned to the Martin place for another gallon of wine, which he also purchased for $10.00. On the 19th of August, Sheriff Taylor returned to the Martin place with a warrant, seized all of Martin's winemaking equipment, and poured out approximately 900 gallons of wine, and juice being processed into wine.
Prior to trial, Martin moved to dismiss the indictment against him, on the grounds that it did not comply with the language of the statute on which it was based. Both the Affidavit for Search Warrant and the *1126 Search Warrant itself allege a violation of Miss. Code Ann. § 97-31-21 (1972), as amended. That statute states, in pertinent part:
It shall be unlawful for any person, firm or corporation to manufacture, or distill any vinous, malt, spiritous, or intoxicating liquor or drink which if drunk to excess will produce intoxication. But this statute shall not prohibit citizens of this state from making wine from grapes or berries grown in this state, at their respective homes and using and consuming the same in the home where made, by the family residing therein and dispensing same to guests within said home.
The indictment stated that Martin "did wilfully, unlawfully and feloniously manufacture and distill a quantity of wine, an intoxicating liquor, which if drunk to excess, will produce intoxication, for the purpose of selling the same."
Martin's challenge to the indictment was that it did not allege that he was not manufacturing wine for the consumption of his family or guests. This was also the basis for Martin's motion for a directed verdict. The trial court overruled the motions; however, two of the instructions to the jury reflected the statutory language.
Sheriff Taylor testified at trial that it was his opinion that Martin's entire venture was illegal. During the arrest, he poured out all of the juice on the premises, despite the fact that Mrs. Martin told him that some of it was hers. He also confiscated several pieces of equipment from the premises, including: glass jugs, sugar, butane tanks, grape crushers, and wooden barrels.
Frankie Daniels, who is in enforcement for the Alcohol Beverage Control Division of the State Tax Commission, agreed with Sheriff Taylor, and testified, over objection, that a county was dry until voted wet. The trial judge also took this position, and, at the end of the trial, read into the record his opinion that a county was dry until voted wet, that the Native Wine Act did not amend the law in this regard, and that the Native Wine Act did not apply to this case. His reasoning on the last point was that: 1) Martin never made any attempt to comply with the Act by obtaining a permit to sell, and 2) a native winery cannot operate in a dry county unless it received a permit while the county was wet.
Martin was ultimately found guilty and sentenced to three years and $750.00 fine, the three year sentence being suspended.
The first issue that we must address is the sufficiency of the indictment against Martin. As stated earlier, the Affidavit for Search Warrant and the Search Warrant both cited Miss. Code Ann. § 97-31-21 (1972). The indictment itself did not mention this statute by number, but only recited a part of its language. We note in passing that, while it is not always necessary to recite the statute number under which a defendant is being indicted, the better practice is to include it. This is particularly so in habitual offender cases, where the State has the option of proceeding under one of two statutes. See Bandy v. State, 495 So.2d 486 (Miss. 1986); Dalgo v. State, 435 So.2d 628 (Miss. 1983). The situation is much the same here, where the State may elect enforcement of any of a multitude of liquor laws. Although the failure to do so was not reversible error in this case, we would urge the State in future cases to include the relevant statute in such an indictment.
The appellant's contention on this point was not, however, that he was not adequately apprised of the charge against him, but that the indictment failed to allege all of the elements of the charge. Specifically, he states that the indictment was defective for failure to allege that the wine he possessed was not for personal or domestic use. This assignment of error was expressly refuted by Forbert v. State, 179 Miss. 66, 174 So. 248 (1937), which stated, rationalizing under the predecessor to this statute, that, "[I]n charging the offense of unlawful possession of wine under these sections it is not necessary to negative the exception of homemade wine... ." 179 Miss. at 74, 174 So. at 249.
We hold, then, that the indictment in this case, insofar as it charged the manufacture *1127 of wine, was sufficient. However, we reverse this case, on grounds that the charge for which Martin was indicted and tried has been superseded, with regard to muscadine wine, by the Native Wine Act.
Prior to the passage of Miss. Code Ann. §§ 67-5-1, et seq., known as the Mississippi Native Wine Law of 1976 (or the Native Wine Act), our law on the manufacture and possession of alcohol was governed primarily by Chapter One of Title 67, related to Local Option Alcoholic Beverage Control, and Chapter Three of Title 67, on Sale of Light Wine, Beer, and Other Alcoholic Beverages. Chapter One governed alcoholic beverages with an alcohol content of greater than four percent, while Chapter Three governed those beers and light wines with an alcohol content of four percent or less. (§ 67-1-5; § 67-3-5)
The beverages controlled by these chapters receive widely disparate treatment. Under Chapter One, prohibition was reannounced as the policy of the state (§ 67-1-3), and counties were required to hold elections to legalize the possession or manufacture of alcoholic beverages (§ 67-1-11). Additionally, any existing laws with respect to the possession or manufacture of alcoholic beverages, not inconsistent with Chapter One, were stated to remain in full force and effect. (§ 67-1-3)
In contrast, the purpose of Chapter Three was to legalize light wines and beer within the state. (§ 67-3-1; § 67-3-5) Counties wishing to prevent this legalization had to hold elections declaring that light wine and beer would not be permitted therein. (§ 67-3-7) Absent such an election, the manufacture and possession of light wine and beer would be legal.
Without the enactment of Chapter Five on native wines, Mr. Martin's wine, which, according to the testimony at trial, had an alcohol content of approximately 11 1/2  14.9%, would have been governed under the provisions of Chapter One of Title 67. Since the testimony at trial also indicated that Itawamba County had never voted to permit alcoholic beverages with an alcohol content of over four percent in the county, the manufacture or possession of this wine in an amount greater than that for personal use would have been prohibited. The passage of the Native Wine Act, however, completely changes the nature of this case.
Miss. Code Ann. § 67-5-3 (Supp. 1986) states, in part, as follows:
The legislature of the State of Mississippi recognizes, by the passage of this chapter, the vital contribution of the agricultural industry to the economy of this state, and declares that the intent of this chapter is to enhance and expand such industry by authorizing and encouraging the domestic production of native wines from grapes, berries, fruits and vegetables grown in Mississippi.

[Emphasis added] Furthermore, § 67-5-7, entitled "Production and sale of native wine legalized," states, "Hereafter, it shall be lawful to produce native wine in the State of Mississippi ... and to sell such native wine within or without this state...." [emphasis added] The wines covered by this chapter were stated, in § 67-5-5, to include any wine with an alcohol content of up to 21% made primarily of the juice of grapes or berries grown in this state. Clearly, the wine made by Mr. Martin fits this category.
In declaring that the provisions of the Native Wine Act prevail in this case, we may rely on two tenets of statutory construction. First, the Native Wine Act consists of laws relating specifically to one form of alcoholic beverage. As such, it is special legislation, which will prevail over the general statutes dealing with alcohol that are contained in Chapter One. State ex rel. Pair v. Burroughs, 487 So.2d 220, 226 (Miss. 1986). Second, in construing statutes in pari materia, as we must here, all of the relevant statutes must be taken into consideration, and a determination of legislative intent must be made from the statutes as a whole. Allgood v. Bradford, 473 So.2d 402 (Miss. 1985). In this case, the legislative intent appears clear. Alcoholic beverages with an alcohol content of over four percent are to be generally discouraged, with the exception of native wines. Their manufacture and consumption is to *1128 be encouraged, and has been legalized, by the plain words of the statute itself. Furthermore, we note that, since the passage of the Native Wine Act, certain provisions of Chapter One have been amended to specifically recognize the legality of native wines. (§§ 67-1-13, 67-1-51) Thus, we hold that the provisions of the Native Wine Act control, and that the manufacture, possession, and sale of such wine are legal throughout the state.
Much is made in this case of the fact that Mr. Martin did not possess, at the time of his arrest, a valid permit issued under the provisions of the Native Wine Act. He was not, however, charged with failure to obtain a permit. Since the state chose to proceed on the indictment under § 97-31-21 at trial, it may not argue affirmance of Martin's conviction on proof of another charge. Talley v. State, 174 Miss. 349, 164 So. 771 (1935).
Finding that this case is controlled by provisions of the Native Wine Act, and that the manufacture of the wine in this case was legal, we reverse the conviction below.
REVERSED AND APPELLANT DISCHARGED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.