658 So.2d 1345 (1995)
Michael McNEAL a/k/a Michael O'Neal
v.
STATE of Mississippi.
No. 92-KA-00179-SCT.
Supreme Court of Mississippi, En Banc.
June 1, 1995.
Rehearing Denied August 3, 1995.
*1346 Tom T. Ross, Jr., Ross Hunt Spell & Ross, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Wayne Snuggs, Asst. Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, Ellen Y. Dale, Ridgeland, for appellee.
JAMES L. ROBERTS, Jr., Justice.
Michael McNeal was convicted in the Circuit Court of Coahoma County, Mississippi, on February 3, 1992, of the crime of burglary. In a separate hearing held on February 5, 1992, McNeal was adjudicated as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 and sentenced to the maximum of seven years in the custody of the MDOC without hope of suspension, parole or probation. It is from this conviction and sentence that McNeal now appeals.

STATEMENT OF FACTS
In the early morning hours of Saturday, October 26, 1991, the Clarksdale Police Department received a call that a burglary was in progress at the cafeteria of the Myrtle Hall School, Number 4. Clarksdale police officers Darry Jenkins and Joe Conners were the first to arrive at the scene. A window on the side of the building had a broken pane and the screen had been pulled up.
After waiting for some time at the scene for someone to arrive with a key to the building, officers Jenkins and Conners saw a person inside the building walk up to the broken window and peek out. There was enough light coming from inside the building for the officers to see the face of the intruder. Both officers recognized Michael McNeal. One or both of the officers called to McNeal by name to come out of the building. McNeal turned and ran to the kitchen area of the cafeteria.
Jenkins and Conners then radioed for assistance. When someone arrived with a key, several officers entered the building and apprehended McNeal. Officers Jenkins, Conners and Jones, who had arrived on the scene in response to the call for assistance, all testified they knew McNeal prior to this incident and identified him in court as the man found in the cafeteria.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL AFTER OFFICER DALE JONES TESTIFIED HE KNEW MICHAEL McNEAL FROM "PREVIOUS ARRESTS."
At trial, Officer Dale Jones inadvertently stated he knew McNeal from "previous arrests." McNeal contends that the trial court committed reversible error in denying a mistrial after this remark was made. The record reveals the context in which this statement was made and defense counsel's subsequent objection and motion for mistrial:
Q. Would you recognize the person you brought out from under that table if you were to see him again?

*1347 A. Yes, sir.
Q. Did you know him at the time?
A. Um, yes, sir, from previous arrests.
Q. Do you see him here in the courtroom today?
A. Yes, sir.
BY MR. ROSS: Your Honor, we would like to approach the bench, please.
BY THE COURT: All right.
(ALL COUNSEL APPROACHED THE BENCH AND THE FOLLOWING CONFERENCE WAS HELD:)
BY MR. ROSS: Your Honor, I think at this point we are going to have to move for a mistrial. Can I talk to my client about it just a minute?
BY MR. HILL: Well, I certainly did not intend to elicit that information. I merely hoped or merely thought that the officer was going to respond with a length of time. I didn't know that he would come out with that, Judge.
BY THE COURT: I'm going to let you renew the motion later. Right now let's go ahead.
BY MR. ROSS: Could you instruct the jury to disregard it?
BY MR. HILL: Yeah.
BY THE COURT: Okay, in the meantime, mark this point on your tape. I want an exact reproduction of the testimony.
BY THE COURT REPORTER: Yes, sir.
(ALL COUNSEL RESUMED THEIR PLACES AND PROCEEDINGS CONTINUED IN FRONT OF THE JURY AS FOLLOWS:)
BY THE COURT: The jury is instructed to disregard the last remark made by the witness.
BY MR. HILL: May we approach again, your Honor?
BY THE COURT: All right.
(ALL COUNSEL RETURNED TO THE BENCH AND THE FOLLOWING CONFERENCE WAS HELD:)
BY MR. HILL: The latest thing I have seen in cases is the Court would ask them if they could do that; if they would disregard it. To cure any potential error.
BY THE COURT: You want me to go further?
BY MR. HILL: Yes, I would just request would you ask them would they, could they all agree to disregard that.
BY MR. ROSS: I'm not familiar with the case you're talking about.
BY THE COURT: Nor am I.
BY MR. HILL: I'll leave it to the Court's discretion.
The trial court did not poll the jury.
At the close of the State's case the trial court allowed the defense to renew its motion for a mistrial at the same time it moved for a directed verdict. The following colloquy took place in chambers with the defendant present:
BY MR. ROSS: All right. Your Honor, we would move for a mistrial on the testimony of Officer Jones who testified on direct that the defendant had prior arrests which indicated he had been in trouble with police before. We would submit to the Court that that would be highly prejudicial against him and inadmissible and we would ask the Court for a mistrial based on that.
* * * * * *
BY THE COURT: By the way, on the mistrial part, I've had the court reporter, you might read back the two questions and two answers, if you would.
BY THE COURT REPORTER: "Would you recognize the person you brought out from under that table if you were to see him again?" "Yes, sir." "Did you know him at the time?" "Um, yes, sir, from previous arrests." "Do you see him here in the courtroom today?" "Yes, sir."
BY THE COURT: So it was an unsolicited response. But, never the less, the words "previous arrests" was mentioned.

*1348 BY MR. HILL: Yes, sir, and I assure the Court I had no intention of eliciting that, nor did I realize it was going to come out.
BY MR. ROSS: No, we certainly don't say that the State intended to do that.
BY MR. HILL: I would state to the Court that the court did admonish the jury to disregard that remark and I believe that the jury, they're supposed to do what the trial judge tells them to do and, unless there's some reason to believe they would not, I believe the motion for a mistrial should be refused or denied.
After further discussion off the record, the trial judge denied the motion and the case went to the jury.
Evidence of past crimes not resulting in conviction is generally inadmissible, Lightsey v. State, 493 So.2d 375 (Miss. 1986), and "a mistrial in such a case is proper unless it can be said with confidence that the inflammatory material had no harmful effect on the jury," Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987) (citations omitted).
Sanders v. State, 586 So.2d 792, 797 (Miss. 1991). However, where an objection to such impermissible testimony is sustained and the jury is admonished by the trial court to disregard the statement, this Court has repeatedly held that refusal to grant a mistrial is proper. See Haymer v. State, 613 So.2d 837, 840 (Miss. 1993); Baine v. State, 604 So.2d 249, 256-57 (Miss. 1992); Wright v. State, 540 So.2d 1, 4 (Miss. 1989); Marks v. State, 532 So.2d 976, 982 (Miss. 1988). This Court has so held because "jurors are presumed to have followed the trial judge's instructions." Sanders, 586 So.2d at 797 (citing Walker v. State, 473 So.2d 435 (Miss. 1985)).
In his brief, McNeal concedes that jurors are presumed to have followed the instructions of the trial court, but argues that there is no way of knowing if the jurors could in fact disregard Officer Jones' statement about "previous arrests" without polling them. At trial it was the prosecution who asked the trial judge to poll the jurors on whether or not they could disregard the statement. Defense counsel stated that he had never heard of this procedure. The State left it to the trial judge's discretion. The trial court then simply admonished the jury "to disregard the last remark." The jury was not polled.
The trial court's admonishment to the jury left something to be desired. When it referred to the "last remark" it overlooked the fact that the witness had given a response after the "other arrests" statement. While it is better practice to poll the jury in order to be sure they understand and can follow the court's instruction, this Court has never held this procedure to be required. See Baine, 604 So.2d at 256-57 (Miss. 1992). citing Wright v. State, 540 So.2d 1, 4 (Miss. 1989) ("Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error") and Marks v. State, 532 So.2d 976, 982 (Miss. 1988) ("refusal to grant mistrial was proper where trial court sustained objection and instructed jury to disregard improper testimony"). In the instant case, the error in failing to poll the jury, if any, was certainly harmless. No less than four police officers testified that McNeal was found in the school cafeteria. McNeal's statement admitting he was in the school was introduced without objection. We are without doubt that any reasonable jury would have found him guilty without the officer's offending remark. Thus we need not rely upon the curative effect of the trial judge's admonition to the jury. We find any error harmless beyond a reasonable doubt.

II. THE COURT ERRED WHEN IT SENTENCED MICHAEL McNEAL AS AN HABITUAL CRIMINAL PURSUANT TO MCA § 99-19-81. SINCE THAT PORTION OF THE INDICTMENT CHARGING HIM AS AN HABITUAL CRIMINAL FOLLOWED THE CONCLUSION OF THE INDICTMENT SINCE SAID CHARGING LANGUAGE CAME AFTER THE PHRASE "AGAINST THE PEACE AND DIGNITY OF THE STATE" IN VIOLATION OF ARTICLE 6, § 169 OF THE MISSISSIPPI CONSTITUTION.
That portion of the indictment charging McNeal as an habitual offender was on a *1349 separate page from the rest of the indictment. McNeal argues that pursuant to Section 169 of the Mississippi Constitution of 1890, the indictment concluded with the words "against the peace and dignity of the state" which were found on the first page of the indictment; and therefore, he was not properly charged as an habitual offender and could not be sentenced as such. The State argues that this was only a technical violation and since McNeal was found to be on notice that he was being charged as an habitual offender he was not prejudiced, making the error harmless.
Section 169 of the Mississippi Constitution reads:
The style of all process shall be "The State of Mississippi" and all prosecution shall be carried on in the name and by authority of "The state of Mississippi", and all indictments shall conclude "against the peace and dignity of the State."
McNeal relies on Clingan v. State, 135 Miss. 621, 100 So. 185 (1924), as his only supporting authority. In Clingan, the indictment charging Clingan failed to conclude with the language, "against the peace and dignity of the state." This Court held the indictment void. The Court, quoting Love v. State, 8 So. 465 (Miss. 1891) stated:
We must believe that the provision we are considering means that all indictments and informations, and affidavits upon which criminal prosecutions are based, must conclude `against the peace and dignity of the state of Mississippi.' It is true, even then, the provision appears to us to be idle and meaningless, but we find it in the fundamental law, and we cannot disregard it. The affidavit in the case at bar wholly neglects and contemns this requirement, and is fatally defective.
Clingan, 100 So. at 185, quoting, Love, (Miss.) 8 So. 465.
Unlike in Clingan and Love, McNeal's indictment did contain the words "against the peace and dignity of the state." The problem in the case at bar is that the language charging McNeal as an habitual offender came after these words. McNeal admits in his brief that he is not arguing lack of notice but instead is arguing the indictment concluded with the words "against the peace and dignity of the state," and therefore he was, in effect, not indicted as an habitual offender and could not be sentenced as such.
Rule 2.05 of the Miss.Crim.R.Cir.Ct.Prac. sets out what should be contained in an indictment, as follows:
(1) The name of the accused;
(2) The date on which the indictment was filed in each court;
(3) A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
(4) The county and judicial district in which the indictment is brought;
(5) The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient;
(6) The signature of the foreman of the grand jury issuing it; and
(7) The words "against the peace and dignity of the state".
The indictment charging McNeal as an habitual offender is in compliance with Rule 2.05 as well as, Rule 6.04, which sets out what must be included in an indictment under one of the habitual offender statutes. It does not, however, specifically comply with § 169 of the Mississippi Constitution of 1890. The State argues that since the indictment complied with Rules 2.05 and 6.04 and McNeal was on notice he was being charged as an habitual offender, the error was simply a technical violation and should be considered harmless error.
The State points out that since Clingan and Love were decided this Court has applied the harmless error doctrine in cases involving a violation of a constitutional right. See Ormond v. State, 599 So.2d 951, 956 *1350 (Miss. 1992) (denial of right to counsel requires reversal of subsequent conviction only where it is shown accused was prejudiced by that denial of counsel); Jimpson v. State, 532 So.2d 985, 989 (Miss. 1988) (denial of right to counsel at lineup identification, although a technical violation of Sixth Amendment right, was harmless where evidence showed incourt identification was not based on lineup identification). See also Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (recognized the doctrine of "harmless constitutional error").
The State also points out that when an indictment sufficiently puts a defendant on notice of the charges against him, this Court has often held minor technical errors to be harmless. Cooper v. State, 639 So.2d 1320, 1323 (Miss. 1994) (variance between indictment and proof at trial not fatal when variance neither material nor prejudicial and indictment sufficiently put defendants on notice of crime charged); Brooks v. State, 573 So.2d 1350, 1353-54 (Miss. 1990) (technical and non-jurisdictional deficiencies waived when defendant failed to raise them in the lower court); Benson v. State, 551 So.2d 188, 195 (Miss. 1989) (in habitual offender portion of indictment, failure to give dates of prior convictions did not make indictment fatally defective when other information in indictment afforded defendant access to dates); Martin v. State, 501 So.2d 1124, 1126 (Miss. 1987) (failure to cite statute number in indictment not reversible error).
In Reining v. State, 606 So.2d 1098, 1103 (Miss. 1992), this Court held, "[i]f an indictment reasonably provides the accused with actual notice and it complies with Rule 2.05 of the Unif.Crim.R.Cir.Ct.Prac., it is sufficient to charge the defendant with the crime." See Armstead v. State, 503 So.2d 281, 283 (Miss. 1987); Harden v. State, 465 So.2d 321, 324 (Miss. 1985). In Armstead, the Court stated, "[a]ll questions regarding the sufficiency of indictments are determinable by reference to Rule 2.05, Uniform Criminal Rules of Circuit Court Practice." 503 So.2d at 281.
In the case at bar, McNeal admits that he is not arguing lack of notice. It is also clear that the indictment, including the portion charging him as an habitual offender met the requirements of Rule 2.05. However, the Mississippi Constitution cannot be amended by either case law or rules of court.
Section 169 of the Mississippi Constitution of 1890 clearly states that a criminal indictment must "conclude `against the peace and dignity of the state.'" (emphasis added). Although the indictment in the case at bar contained these words and the defendant was sufficiently on notice as to what criminal charges were being brought against him, the habitual offender portion of the indictment came after the words "against the peace and dignity of the state." In the words of the Love Court, "the provision appears to us to be idle and meaningless, but we find it in the fundamental law, and we cannot disregard it." Love, 8 So. 465. This is not an instance where this Court can argue semantics. The word "conclude" is neither ambiguous nor vague. It simply means "to bring to an end." Webster's New Collegiate Dictionary (1974). Even though McNeal was not prejudiced in this instance, § 169 of the state constitution was not complied with and that portion of the indictment charging McNeal as an habitual offender was fatally defective.
This defect does not affect McNeal's conviction. Miss. Code Ann. §§ 99-19-81, -83, the habitual offender statutes, "are not criminal offenses and only affect sentencing." Osborne v. State, 404 So.2d 545, 548 (Miss. 1981). Therefore, only McNeal's habitual offender status is vacated. The seven year sentence will remain in place but McNeal will be eligible for parole.

CONCLUSION
The trial court properly admonished the jury to disregard the remark concerning McNeal's previous arrests, curing any error resulting therefrom. McNeal's motion for mistrial was properly overruled.
McNeal had sufficient notice that he was being charged as an habitual offender. Although the indictment complied with Rule *1351 2.05, it did not comply with § 169 of the Mississippi Constitution of 1890. Prosecutors are cautioned and instructed to properly draft all documents.
McNeal's conviction and sentence of seven years is affirmed, but his sentence as an habitual offender is reversed and rendered per the terms of this opinion.
CONVICTION OF BURGLARY AND SENTENCE OF SEVEN (7) YEARS IN THE DEPARTMENT OF CORRECTIONS AFFIRMED. REVERSED AND RENDERED AS TO HABITUAL OFFENDER STATUS.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting.
Because the majority incorrectly finds that the jury was adequately instructed to disregard prejudicial comments made by a witness regarding the defendant's "previous arrests," and because it further plays jury by reweighing the facts and declaring "harmless error," I dissent.
As the majority points out, Officer Dale Jones "inadvertently" stated that he was acquainted with McNeal from "previous arrests." His testimony, in relevant part, follows:
Q. Would you recognize the person you brought out from under the table if you were to see him again?
A. Yes, sir.
Q. Did you know him at the time?
A. Um, yes, sir, from previous arrests.
Q. Do you see him here in the courtroom today?
A. Yes, sir.
Counsel for McNeal immediately approached the bench and moved for a mistrial. The circuit court did not rule, but permitted him to renew the motion later in the trial. The defense then requested that the court instruct the jury to disregard Officer Jones' comments. The circuit court instructed the jury merely "to disregard the last remark made by the witness," ostensibly regarding his affirmative response to seeing McNeal in the courtroom, not the comment at issue. McNeal's renewed motion for a mistrial was denied.
Evidence of prior crimes which did not result in a conviction generally is not admissible. "`A mistrial in such case is proper unless it can be said with confidence that the inflammatory material had no harmful effect on the jury.'" Sanders v. State, 586 So.2d 792, 797 (Miss. 1991), quoting Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987). Where an objection has been made and the jury is admonished to disregard the offending statement, refusal to grant a mistrial is proper. Haymer v. State, 613 So.2d 837, 840 (Miss. 1993). In this case, however, the jury was admonished only to disregard Officer Jones' last remark. The statement regarding his acquaintance with the defendant from "previous arrests" was not the last statement made nor was the jury specifically instructed to disregard the prejudicial comment.
In the civil context, the mere mention of insurance in a personal injury case may lead to a mistrial when, as in the case sub judice, a contemporaneous objection has been made and the jury is not properly admonished to disregard the prejudicial comment. Sperry New Holland v. Prestage, 617 So.2d 248, 258 (Miss. 1993); Anchor Coatings v. Marine Industrial Residential, Inc., 490 So.2d 1210, 1219 (Miss. 1986); Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902). Where a person's life and liberty are at stake, it is all the more important that our laws and constitution be followed. The jury should have been clearly instructed to disregard comments such as that made by Officer Jones. Proper admonition was not given in this case. We grant mistrials for lesser statements made to a jury when a simple word like "insurance" is mentioned. Here, the defense attorney acted *1352 in accordance with our instructions for a mistrial. While the majority sees fit to ignore this, I cannot. Accordingly, I dissent.