THOMAS, P.J.,
for the Court:
¶ 1. Perry King appeals his conviction of two counts of jail escape in the Circuit Court of Covington County. King was sentenced as an habitual offender to the custody of the Mississippi Department of Corrections to serve a term of five years on count one and five years on count two, with count two to run consecutively to the sentence imposed on count one. Feeling aggrieved, King appeals on the following assignments of error:
I.WHETHER THE PORTION OF THE INDICTMENT CHARGING MR. KING AS A HABITUAL OFFENDER WAS FATALLY DEFECTIVE UNDER § 169 OF THE MISSISSIPPI CONSTITUTION?
II. DID THE CIRCUIT COURT ERR IN DENYING MR. KING’S MOTION FOR A DIRECTED VERDICT SENTENCING HIM UNDER MISS. CODE ANN. § 97-9-49(2) INSTEAD OF § 97-9-49(1) AS TO COUNT ONE?
III. WHETHER THE VERDICT FOR COUNT TWO WAS SUFFICIENTLY SUPPORTED BY THE EVIDENCE PROFFERED BY THE STATE?
Finding error in Issue II, we reverse and remand for sentencing as to Count I. Finding no error in King’s remaining Issues, I and III, we affirm.
FACTS
¶ 2. Perry King was an inmate in the Covington County Sheriff Department’s jail serving time for a burglary conviction. During King’s incarceration in the Coving-ton County Sheriff Department’s jail, he was granted trustee status. As a trustee, King was granted privileges beyond that of the normal inmate. King’s trustee status allowed him limited supervision while working within the confines of the sheriffs departmental grounds. King’s duties included various cleaning jobs in and around the departmental grounds, including filling the patrol car gas tanks as needed. The departmental refueling tanks were located on an adjacent parcel of land some 100 to 200 feet away from the sheriffs department. Whether the adjacent land was within the departmental grounds of the sheriffs office was neither proved nor disproved at trial.
¶ 3. During the late evening hours of September 4, 1994, between 11:30 p.m. and midnight, Deputy Pat Bullock was asked by King if he needed his patrol car filled with gas, to which Deputy Bullock initially stated, “No,” but then said, “Yeah. Go ahead and fill it up. I may get another call.” Deputy Bullock gave the keys to King, and King proceeded to the fuel *1057 tanks, filled the patrol car, then got back into the patrol car and drove away from the sheriffs office. Only Deputies Bullock and Crosby were present during King’s escape on September 4,1994.
¶ 4. Deputy Crosby testified that he witnessed King drive past the sheriffs office and continue down the road. Deputy Crosby advised Deputy Bullock of the situation as it was occurring, but by then it was too late as King was already out of sight. The deputies then informed the area law enforcement departments of the situation and a search for King began shortly thereafter. Both Deputies Bullock and Crosby testified that King was not given permission to leave the sheriff office’s departmental grounds.
¶ 5. Following a search that night, Deputy Bullock’s abandoned patrol ear was located at around 11:00 a.m. the following morning. The search for King continued, ultimately involving K-Nine units to aid in the search, until September 7, 1994 when King was spotted in the vicinity of the Lily Valley community. A search of that area resulted in the capture of King by Deputy Bullock on September 7, 1994. King was taken into custody, returned to the Cov-ington County Jail, and charged with escape. King’s trustee status was revoked, and he was confined to his jail cell for his escape.
¶ 6. Despite King’s recent capture and return to the Covington Count Jail on September 7, 1994, King escaped again on the morning of November 22, 1994, at around 7:00 a.m. Deputy Booker Rankin testified to King’s escape on November 22, 1994. Deputy Rankin testified that after King was captured following his September 4, 1994 escape, King’s trustee status was revoked and King was confined to his jail cell. Deputy Rankin further testified that King did not have permission to leave the Covington County Jail on November 22,1994.
¶ 7. Deputy Rankin provided testimony on the events that lead to King’s second capture following the November 22, 1994 escape. A search for King continued through the morning of November 24,1994 when King was located and taken into custody by Deputy Rankin. King was captured in an abandoned car near the same area he had- been located following his September 4, 1994 escape. At trial the State offered the testimony of Deputies Bullock, Crosby, and Rankin. King elected to rest at the close of the State’s casein-chief and offered no witnesses or evidence at trial.
ANALYSIS
I.
WHETHER THE PORTION OF THE INDICTMENT CHARGING MR. KING AS A HABITUAL OFFENDER WAS FATALLY DEFECTIVE UNDER § 169 OF THE MISSISSIPPI CONSTITUTION?
¶ 8. King argues that the form of the indictment charging him with two counts of escape, one count of grand larceny, and the enhancement for his habitual offender status was fatally defective for failing to include the language “against the peace and dignity of the State of Mississippi” as required under § 169 of the Mississippi Constitution after the habitual offender enhancement portion of the indictment. King specifically cites to McNeal v. State, 658 So.2d 1345 (Miss.1995) in support of his argument. King correctly argues the applicability of McNeal to the apparent defect in the indictment as charged in the case sub judi-ce.
¶ 9. In McNeal, the defendant was indicted on a charge of burglary and the enhancement provision as a habitual offender. The indictment failed to include the language “against the peace and dignity of the State of Mississippi” after the habitual offender enhancement portion of the indictment. In reversing McNeal’s conviction under the habitual offender enhancement portion of the indictment for *1058 failure to include the required language at issue, the supreme court held:
Section 169 of the Mississippi Constitution of 1890 clearly states that a criminal indictment must “conclude ‘against the peace and dignity of the state.’ ” (emphasis added). Although the indictment in the case at bar contained these words and the defendant was sufficiently on notice as to what criminal charges were being brought against him, the habitual offender portion of the indictment came after the words “against the peace and dignity of the state.” In the words of the Love Court, “the provision appears to us to be idle and meaningless, but we find it in the fundamental law, and we cannot disregard it.” This is not an instance where this Court can argue semantics. The word “conclude” is neither ambiguous nor vague. It simply means “to bring to an end.” Webster’s New Collegiate Dictionary (1974). Even though McNeal was not prejudiced in this instance, § 169 of the state constitution was not complied with and that portion of the indictment charging McNeal as an habitual offender was fatally defective.
McNeal, 668 So.2d at 1350 (citations omitted).
¶ 10. The McNeal court acknowledged that while a defendant may not have been prejudiced as a result of the omitted language, failure to comport with the requirements of the Mississippi Constitution renders the indictment fatally defective. If the circumstances in the case sub judice warranted a conclusion under the well settled precedent of McNeal, we would be compelled to end our analysis of this issue. However, the events that transpired at trial requires analysis beyond the holding of McNeal. That having been said, we now turn to Brandau v. State, 662 So.2d 1051 (Miss.1995) for further review of this assignment of error.
¶ 11. In Brandau, the defendant failed to object to the form of the indictment at the trial level. The indictment against Brandau, equally similar to the issue raised by King in the ease sub judice, failed to include that language required in § 169 of the Mississippi Constitution in concluding the written language of the indictment. Despite the readily apparent conclusion that the indictment against Brandau was fatally defective under § 169 of the Mississippi Constitution and the pri- or holding in McNeal, the Mississippi Supreme Court dismissed Brandau’s assignment as procedurally barred for failure to object to the form of the indictment at trial. In this light, King’s failure to object to the form of the indictment at trial results in a procedural bar on appeal to this Court. Brandau, 662 So.2d at 1055.
¶ 12. Further, the formal defect was curable by amendment. In keeping with the rational of Brandau, the formal defect is subject to waiver for King’s failure to demur to the indictment at trial in accordance with our statute. Brandau, 662 So.2d at 1055; Bolen v. State, 309 So.2d 524 (Miss.1975); Moran v. State, 137 Miss. 435, 102 So. 388 (1925).
¶ 13. King additionally argues that although he failed to object at trial to the defect in the indictment, the error in the indictment amounts to a serious miscarriage of justice and that we should recognize it under our plain error doctrine. In light of the express language of Brandau, we decline to do so. This assignment of error is without merit.
II.
DID THE CIRCUIT COURT ERR IN DENYING MR. KING’S MOTION FOR A DIRECTED VERDICT SENTENCING HIM UNDER MISS. CODE ANN. § 97-9-49(2) INSTEAD OF § 97-9-49(1) AS TO COUNT ONE?
¶ 14. King submits in his appeal to this Court that error was predicated in the circuit court’s denial of his motion for directed verdict on the lesser-included-offense of “wilful failure to return to jail *1059 after being entrusted to leave.” Miss. Code Ann. § 97-9-49(2) (Rev.1994). King argues specifically that the refueling tanks, despite their close proximity to the Sheriffs Office Departmental Grounds, were not proven at trial to be the property of the Covington County Sheriffs Office. From this assertion King argues that the prosecution failed to meet their burden of proof during their case-in-chief as is required by the crime as charged in the indictment under Count I.
¶ 15. Our standard of review of the denial of a motion for a directed verdict is well settled and is as follows:
The standard of review in judging the sufficiency of the evidence on motion for directed verdict requires that we accept as true all evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt, the trial court’s denial of the motion must be affirmed.
White v. State, 566 So.2d 1256, 1259 (Miss.1990) (quoting Boyd v. State, 523 So.2d 1037, 1040 (Miss.1988); Stever v. State, 503 So.2d 227, 230 (Miss.1987); Haymond v. State, 478 So.2d 297, 299 (Miss.1985)). In the case sub judice, the prosecution presented testimony, via Deputy Crosby, that the fueling tanks were on Covington County Sheriffs Office property. However, on cross-examination Deputy Crosby admitted that while he assumes that fueling tanks are located on departmental property, he does not personally know who owns the property on which the fueling tanks are located.
¶ 16. On this testimony, King argues that since the State failed to prove that the fuel tanks used to fill the patrol cars were positively located on the jail’s premises, King had permission to leave the departmental grounds. King argues that the State’s failure to establish whether the fueling tanks were or were not located on the jail’s premises equates to a breach of entrustment under § 97-9-49(2) for which he could only be sentenced to a term of six months rather than the sentence of five years he received under § 97-9-49(1). King cites to Bourdeaux v. State, 412 So.2d 241 (Miss.1982) and State v. Bradford, 522 So.2d 227 (Miss.1988) in support of his argument.
¶ 17. In Bourdeaux, an inmate with semi-trustee status was entrusted to leave the Lauderdale County Jail’s premises on an errand for the department by one of its officers. Unaccompanied, Bourdeaux was entrusted to take a patrol car to a local service station to have the some work done on its siren. After Bourdeaux took the patrol car to the designated service station, he placed a phone call to his girlfriend from the nearby bus station. After she arrived, the two left and went for a ride from which he did not return.
¶ 18. Bourdeaux was indicted under Miss.Code Ann. § 97-9-45 (Supp.1981). Under § 97-9-45 the State is required prove that the accused escaped from the Department of Corrections (penitentiary) or escaped from “custody” before confinement. In reversing Bourdeaux’s sentence under § 97-9-45, the supreme court held that the provisions § 97-9-49, which is confined to escape from a “jail,” was the applicable statute under the facts before the court. Bourdeaux, 412 So.2d at 243. The court reached its distinction on a plain reading of the two statutes as the particular facts of the case related and held that Bourdeaux “willfully failed to return to the jail within the stipulated time, or after the accomplishment of the purpose for which he was entrusted to leave.” Id. The court, in keeping conformity with such willful failure to return from an authorized departure rather than the jail itself, held that it must apply § 97-9-49(2) and impose a sentence not exceeding six months to his original sentence.
¶ 19. In Bradford, a trustee was entrusted to work at the Harrison County Sheriffs Office Service Station which was locat *1060 ed about a mile and a half from the actual jail. On previous occasions Bradford had been granted permission to leave the service station to run various errands but had not been granted permission to leave on the day of his escape. Bradford decided to leave the service station and visit his girlfriend in Florida, which he did. He was later apprehended and returned to the Harrison County authorities.
¶ 20. Bradford was indicted and charged with escape under Miss.Code Ann. § 97-9-49 (Supp.1985). He pled guilty and was sentenced to six months under § 97-9-49(2). The State appealed Bradford’s sentence and argued Bradford should have been sentenced under § 97-9-49(1), which would have resulted in a much greater sentence. The State argued that § 97-9-49(1) was the proper subsection of the applicable statute under the circumstances of Bradford’s escape.
¶ 21. The Mississippi Supreme Court upheld Bradford’s sentence under § 97-9-49(2). The court found that Bradford had been assigned to work at the sheriffs office gas station which was located approximately one and one-half miles from the jail premises. Bradford, 522 So.2d at 228. From that determination the court held that Bradford’s “assignment constituted an involuntary departure contemplated by Miss.Code Ann. § 97-9-49(2) (Supp.1985) from the jail to the service station.” Id.
¶ 22. We are asked today to determine whether King’s departure from the patrol car refueling assignment authorized by Officer Bullock constitutes a criminal act under subsection (1) or (2) of Miss.Code Ann. § 97-9-49. In keeping with the Mississippi Supreme Court’s rational in Bourdeaux and Bradford, it is necessary to consider the nature of King’s assignment and whether the given assignment by Officer Bullock necessitated the removal of King’s person from the premises of the Covington County Jail.
¶ 23. In response to this question, the State advances the argument that “the evidence established that at the time the Defendant was sent to put gas in the patrol car, the tank was believed to be on the jail’s property.” Further, that the distance between the fuel tank’s location and the known sheriffs officer property was only “100 to 200 feet.” In support, the State argues that it was the “practice and understanding of the Deputies that the land belonged to the department and was part of the jail.” From this argument, the State submits that because of the belief that the known jail property also encompassed the area in which the fuel tanks were located, Deputy Bullock did not give King permission to leave the jail’s premises.
¶24. King, as previously stated, argues that the issue of the refueling tank’s location and the ownership of the property on which they are located was in dispute at trial and was never fully established by the prosecution. Upon a complete review of the record, it is readily apparent that the question of the ownership of the property on which the refueling tanks were located was left unanswered at trial. Deputy Crosby testified on direct examination that the fueling tanks were located on Coving-ton County Sheriffs Office property. However, on cross-examination when asked if he knew from his personal knowledge whether the fueling tanks were located on property owned by the sheriffs office, Deputy Crosby stated that he only assumes the refueling tanks are located on sheriffs office property. No additional testimony or evidence on this issue was introduced at trial. The issue is, therefore, ambiguous.
¶ 25. While it is clear that at the time of King’s escape on September 4, 1994 he was a trustee at the Covington County Jail and was authorized on that date by Officer Bullock to refuel a patrol car located on some adjacent property some “100 to 200 feet” away from the sheriffs department, the failure to establish whether King’s assignment did or did not necessitate the removal of his person from the jail’s prem *1061 ises remains. Therefore, in light of the above and the supreme court’s holdings in Bourdeaux and Bradford, we cannot say that King’s authorized assignment did not necessitate removal of his person from the known premises of the Covington County Jail. Under these circumstances, King should have been sentenced under Miss. Code Ann. § 97-9-49(2) (Rev.1994). We reverse and remand for sentencing consistent with this opinion.
III.
WHETHER THE VERDICT FOR COUNT TWO WAS SUFFICIENTLY SUPPORT BY THE EVIDENCE PROFFERED BY THE STATE?
¶ 26. King argues that the evidence presented at trial was insufficient to support a conviction on Count II. King argues that the State failed to present additional officers or additional testimony beyond that of Officer Booker Rankin. King maintains that by calling only one witness to testify to the November 22, 1994 escape charge set forth in Count II of the indictment, a reasonable doubt existed as to whether permission could have been given by officers other than Officer Rankin.
¶ 27. At trial the State called Officer Rankin to testify on the November 22, 1994 escape by King. Officer Rankin testified that after King’s capture following his September 4, 1994 escape, King’s trustee status was revoked, and he was confined to his cell at the Covington County Jail. Officer Rankin further testified that on November 22, 1994, King and another inmate escaped and eluded authorities until November 24, 1994, when King was located and captured by Officer Rankin near the same area he had been captured following his September 4, 1994 escape. Officer Rankin testified that King did not have permission to leave the jail on November 22, 1994, from himself personally and that to his knowledge King did not have permission from any other officers.
¶ 28. On cross-examination, Officer Rankin was asked whether it was possible that “someone else could have [granted permission] as far as you know,” to which Officer Booker answered, “Possibility.” It is from this response by Officer Rankin and the State’s election to only have one witness testify to the November 22, 1994 escape, that King maintains the evidence was insufficient to support his conviction. We note that Officer Rankin also testified on redirect that he was able to determine from all of the officers present during the search for King following his November 22, 1994 escape that “no one had given him permission to leave.” It is well settled that it is the State who bears the burden of presenting in its case-in-chief sufficient evidence to support the elements of the crime charged; in short, it is the State and not King who must prove their case. Nevertheless, we note that King elected not to proffer any testimony or evidence to refute that of Officer Rankin; therefore, Officer Rankin’s testimony went and remains un-contradicted.
¶ 29. Our standard of review on issues of whether the verdict was sufficiently supported by the evidence presented at trial is a review of the totality of the circumstances.
“[0]ur concern here is whether the evidence in the record is sufficient to sustain a finding adverse to [the defendant] on each element of the offense.... [W]ith respect to each element, of the offense, [we must] consider all of the evidence — not just the evidence which supports the case for the prosecution— in light most favorable to the verdict.” Wetz v. State, 503 So.2d 803, 808 (Miss.1987). in these types of sufficiency questions, the Supreme Court conducts an independent review of the entire record. Holland v. State, 587 So.2d 848 (Miss.1991).
Yates v. State, 685 So.2d 715, 718 (Miss.1996).
¶ 30. We have conducted a complete and detailed review of the record as presented *1062 to this Court on appeal. Under the required standard of review we cannot say that the verdict as to Count II was insufficiently supported by the evidence presented at trial. This assignment of error is without merit.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION ON TWO COUNTS OF ESCAPE IS AFFIRMED IN PART AND REVERSED IN PART. COUNT I, ESCAPE, CONVICTION IS AFFIRMED WITH THE SENTENCE REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COUNT II, ESCAPE, CONVICTION AND SENTENCE OF FIVE (5) YEARS AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COVINGTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.