MYERS, J.,
for the Court.
¶ 1. Kenaith Demario Avery, pro se, filed a post-conviction relief motion which was denied by the trial court. On appeal, Avery asserts the following issues:
1. WHETHER THE GUILTY PLEA ENTERED BY AVERY WAS NOT VOLUNTARILY NOR INTELLIGENTLY MADE;
2. WHETHER THE INDICTMENTS WERE DEFECTIVE; AND
3. WHETHER THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
STATEMENT OF THE FACTS
¶ 2. On January 12, 2000, Avery pled guilty to three indictments charging him with sale of cocaine. The sales had occurred on or about November 4 and December 17, 1998, and on or about January 28, 1999. Avery had prior convictions of aggravated assault and escape, thus resulting in the indictment’s inclusion of habitual offender status. As part of the plea agreement, the State moved to have the habitual status portion of the three indictments remanded. Avery was sentenced to twenty-eight years with five years of post-release supervision following twenty-three years of incarceration for one of the offenses. For the other two offenses the trial judge sentenced Avery to two ten-year terms to be served concurrently. The trial judge also added other minor fines and penalties to Avery’s sentence.
¶ 3. After about nineteen months of incarceration, Avery filed his motion for post-conviction relief. The motion was essentially a request to set aside his guilty plea. The motion contained a myriad of claims and requests. The trial court de *127 nied Avery’s motion. Upon denial, Avery perfected his appeal.
LEGAL ANALYSIS
1.WHETHER THE GUILTY PLEA ENTERED BY AVERY WAS NOT VOLUNTARILY NOR INTELLIGENTLY MADE
¶ 4. In determining whether the guilty plea was made knowingly and voluntarily, an examination of the entire record must be conducted. Weatherspoon v. State, 736 So.2d 419, 421(¶ 5) (Miss.Ct.App.1999). This Court is not persuaded that the plea of guilty entered by Avery was involuntary or not made intelligently. In order for a plea to be voluntary, the plea must be “one in which the defendant was advised about the nature of the crime charged against him and the consequences of the guilty plea.” Stovall v. State, 770 So.2d 1019, 1020-21(¶ 7) (Miss.Ct.App.2000). “A plea is deemed ‘voluntary and intelligent’ only where the defendant is advised concerning the nature of the charge against him and the consequences of the plea.” Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992). “Trial judges are entitled to place great weight upon a defendant’s initial plea under oath.” Templeton v. State, 725 So.2d 764, 767(¶ 10) (Miss.1998). This Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous. Stevenson v. State, 798 So.2d 599, 602(¶ 7) (Miss.Ct.App.2001).
¶ 5. Avery argues that his guilty plea was not made voluntarily nor intelligently. We reviewed the record and list the actions taken at the trial level before Avery’s plea:
1. Avery originally pled not guilty to all the charges.
2. Avery petitioned the trial court to change the not guilty plea to guilty.
3. The trial judge questioned the defense attorney whether the attorney had prepared the petition, reviewed it with Avery, and was satisfied that Avery understood the nature and consequences of such petition. The attorney responded in the affirmative.
4. Avery’s testimony was sworn under oath. The trial judge informed Avery that at any túne Avery did not understand something, that Avery should stop the proceedings and request clarification. Avery acknowledged that he understood.
5. Upon questioning from the trial judge, Avery acknowledged that he was twenty-two years old, that he had a ninth grade education, that he was able to read and write, that he had read, understood the petition, and discussed it with his counsel, that he was not under the influence of drugs, alcohol, or anything else that affected his ability to reason, and that he did not suffer from any medical or mental condition that affected his ability to reason.
6. Avery was told that a guilty plea meant the loss of certain federal and state constitutional rights. The judge informed Avery of the right to a speedy public trial, the right to a jury trial, the right to be present at the trial, the right to testify or choose not to testify without consequence, the right to cross-examine witnesses, the right to compel witnesses, the presumption of innocence, and the right to an appeal with an attorney. Avery responded that he understood the loss of these rights.
7. Avery was asked if any reward had been proposed to induce his plea. Avery responded that none had been offered.
8. Avery was asked if any threats had been made to induce his plea. Avery responded that none had been made.
*128 9. The trial judge went over the charges and habitual offender status with Avery, explained to Avery the penalties he was facing if convicted of the charges, and that the trial judge did not have to accept a sentence recommendation. Avery responded that he understood.
10. The trial judge asked Avery if his counsel had. explained the elements of the charges and discussed any defenses Avery may have. Avery acknowledged in the affirmative.
11. The trial judge asked if Avery had been totally satisfied with his counsel’s handling of the case. Avery acknowledged that he had been.
12. The trial judge had the prosecutor read the charges and facts that were going to be presented by the prosecution. The trial judge asked Avery if he understood and agreed with the facts and that he was pleading guilty because he was guilty. Avery acknowledge that the facts were correct and the guilty plea was being entered because he was guilty. The trial judge found that Avery was making such plea voluntarily, intelligently, and knowingly.
¶ 6. Avery pled guilty to all three of the indictments. As his basis for the argument, Avery refers to the “threat” of a ninety-year prison sentence if convicted and potentially life imprisonment based upon the habitual offender status and the need for the trial judge to further investigate Avery’s satisfaction with his counsel.
¶ 7. The “threat” is easily dealt with. There were three indictments against Avery and a conviction of any of the three could have resulted in the imposition of a ninety-year sentence or even life imprisonment under the habitual offender law. Mississippi law allows an indictment to include the habitual offender status language if applicable. This cannot be called a threat. It does not seem that Avery has taken into consideration the fact that if this Court grants his request to withdraw his plea, he could face a conviction on any of the three indictments which could result in a sentence of life imprisonment under the habitual offender status rule. As it stands, Avery has the chance to walk out of prison after the twenty-three years a free man rather than being carried out as a corpse.
¶ 8. As to the need for the trial judge to further investigate Avery’s satisfaction with his counsel, Avery was specifically asked about his satisfaction of counsel. Avery made no mention of any discord between himself and his defense attorney until his petition for post-conviction relief.
¶ 9. Avery’s testimony was sworn under oath. The trial judge methodically and carefully explained to Avery the situation. Avery had the ability to understand the nature and consequences of the entry of a guilty plea. This Court can not ask a trial judge to do more than the trial judge did to make absolutely sure a plea is entered voluntarily and intelligently.
2. WHETHER THE INDICTMENTS WERE DEFECTIVE
¶ 10. Avery’s argument that the indictments were defective is curious at best. His argument is based on a failure to follow Section 169 of the Mississippi Constitution. Section 169 reads:
The style of all process shall be “The State of Mississippi” and all prosecution shall be carried on in the name and by authority of “The State of Mississippi”, and all indictments shall conclude “against the peace and dignity of the State.”
¶ 11. Avery relies solely on McNeal v. State, 658 So.2d 1345 (Miss.1995). In McNeal, the Supreme Court decided that *129 the requirement of Section 169 must be literally followed. “[T]he provision appears to us to be idle and meaningless, but we find it in the fundamental law, and we cannot disregard it.” McNeal, 658 So.2d at 1350 (quoting Love v. State, 8 So. 465 (Miss.1891)). In McNeal, the Supreme Court ruled that because the habitual offender status language came after the Section 169 required language, the indictment was defective as to the habitual offender status language.
¶ 12. In the case sub judice, there were three indictments. Each indictment listed the drug related charge followed by the Section 169 required language. The indictments continued with the habitual offender status followed by the Section 169 required language. Avery’s argument, although not clear, seems to suggest that as in McNeal, the indictment concluded with the first use of the Section 169 language. Avery’s argument is odd because he was not sentenced under the habitual offender status.
¶ 13. Research suggests that after McNeal was decided, a floodgate of post-conviction relief requests were filed arguing the same point. A couple of months after McNeal, the Mississippi Supreme Court upheld the ruling that Section 169 was a necessary requirement of an indictment but stated that the issue needed to be raised earlier. Brandau v. State, 662 So.2d 1051, 1053-55 (Miss.1995). The opinion in Brandau came as a result of a motion for rehearing. The court held that the issue needed to be raised at the trial level. Voyles v. State, 822 So.2d 353, 358 (¶¶ 20-22) (Miss.Ct.App.2002). Additionally, this Court determined that when the language “against the peace and dignity of the State” is used at the end of each count in an indictment, there is no constitutional violation. Evans v. State, 742 So.2d 1205, 1209 (¶¶ 12-13) (Miss.Ct.App.1999) (required words used after each count in an indictment and the habitual offender status).
¶ 14. In any event, Avery pled guilty to the charges. The Section 169 required language appears after the charge. There was no objection made at the trial level as to the indictment. We hold that the indictment was not defective.
3. WHETHER THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
¶ 15. The standard to be applied to an ineffective assistance of counsel claim was set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel, it must be shown (1) that the counsel’s performance was deficient, and (2) the deficient performance caused prejudice to the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Walker v. State, 703 So.2d 266, 268(¶ 8) (Miss.1997); McQuarter v. State, 574 So.2d 685, 687 (Miss.1990); Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). The court elaborated on these requirements in this way:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
*130 Strickland, 466 U.S. at 689, 104 S.Ct. 2052, quoted in Stringer, 454 So.2d at 477.
¶ 16. The deficiency and the prejudicial effect are judged by looking at the totality of the circumstances, and there is a strong presumption counsel’s performance fell within the wide range of reasonable professional assistance. Hiter v. State, 660 So.2d 961, 965 (Miss.1995); McQuarter, 574 So.2d at 687. The burden is on the defendant to demonstrate the Strickland factors to support an ineffective assistance of counsel claim. McQuarter, 574 So.2d at 687. Matters of trial strategy are left to the attorney, and they must also fit within the Strickland guidelines. Chase v. State, 699 So.2d 521, 541(¶ 58) (Miss.1997). Avery argues that he was denied effective assistance of counsel. He presents his argument upon the proposition that his counsel provided erroneous advice and failed to conduct a proper investigation.
¶ 17. Avery presents no evidence of his attorney providing erroneous advice other than that his counsel suggested that Avery should plead guilty. The choice to plead belonged to Avery. His counsel reviewed the charges, the evidence, and potential sentence Avery was facing. This Court agrees that pleading guilty, as to avoid the potential life sentence under the habitual offender status, was a wise choice in the light of the evidence against Avery.
¶ 18. Avery’s other basis is that his counsel failed to conduct a proper investigation. Avery alleges that there was a conspiracy between the police, prosecutor, and eventually his defense counsel. He claims that his counsel only received the discovery package a few days before the entering of the guilty plea, thus a lack of opportunity to properly investigate. It is true that appointed counsel must show the same diligence to their client as a privately retained attorney would to her client, but it is important to remember that many court-appointed attorneys handle similar cases on a daily basis. This Court has reviewed the record and determined that the evidence against Avery was overwhelming and did not require any complex or novel legal issues. While Avery suggests there should have been more done as far as investigating the facts, an attorney cannot twist and mutilate facts and law to garner an acquittal in every case. An attorney takes his clients as he finds them and many times there is little in favor of the client for the attorney to work with. Avery was provided effective assistance of counsel.
CONCLUSION
¶ 19. This Court holds that the decision of the trial judge to deny Avery’s post-conviction relief motion was correct. This Court affirms the decision.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO GRENADA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING AND CHANDLER, JJ„ CONCUR. GRIFFIS, J., NOT PARTICIPATING.